## KELLOGG v. KELLOGG.

1. DIVORCE—EXTREME CRUELTY—EVIDENCE—SUFFICIENCY.
    In wife's suit for divorce, her proofs *held*, to support the charge of extreme cruelty and to justify the trial court in granting her a decree of divorce, although the proofs show some fault on her part.

2. SAME—ALIMONY—EXCESSIVE AWARD.
    An award of $3,500 to the wife as permanent alimony *held*, not excessive, in view of the fact that the home and furniture were worth $8,000, and defendant admitted having $300 in the bank, but his testimony on this phase of the case was shifty and lacked candor.

Appeal from Calhoun; North (Walter H.), J. Submitted April 15, 1924. (Docket No. 68.) Decided June 2, 1924.

Bill by Emily Kellogg against William Kellogg for a divorce. From a decree for plaintiff, defendant appeals. Affirmed.

Authorities discussing the question of extreme cruelty as grounds of divorce, see notes in 18 L. R. A. (N. S.) 304; 34 L. R. A. (N. S.) 360.

On excessiveness of amount of alimony where husband is at fault, see note in 44 L. R. A. (N. S.) 1010.

*James H. & John A. Mustard,* for plaintiff.
*Howard W. Cavanagh,* for defendant.

BIRD, J.   Plaintiff was granted a decree of divorce from defendant on the ground of extreme and repeated cruelty.   She was allowed permanent alimony in the sum of $3,500.   It is the contention of defendant that plaintiff did not make out a case of extreme cruelty, and that the record upon the whole shows her to be quite as much to blame as he was.   The further claim is made that even if she were entitled to a decree that the amount which the court allowed as permanent alimony was excessive.   Before the parties were married in March, 1909, both had been previously married.   At that time plaintiff had three children and defendant had two.   When the case was heard plaintiff was 61 and defendant 64 years of age.   The proofs do not disclose any serious trouble between them for the first few years of their married life. Later defendant grew unsocial and would go for weeks at a time without speaking to her.   He had periods when he would find fault with her, swear at her and call her vile and vulgar names.   He charged her with being a soldier chaser and with being unchaste.   He was also unsocial and uncivil to friends of plaintiff who called upon her.   The children of each were the cause of some of the unpleasantness.   He appeared to have very little feeling for her, as is evidenced by one occasion when she fell in a faint to the floor. Upon his attention being called to her he replied, "let her lie there," adding a vulgar comment.   In their early married life plaintiff took charge of his wages and paid the bills.   After they paid for their home he took the money matters away from her and would not tell her what wages he was getting, would not disclose to her what he was doing with his money, in fact, would not discuss his money matters with her at all.

227—Mich.—29.

Defendant's counsel argues that plaintiff was as much at fault as he was, and that on one or two occasions she swore at and called him vile names. While the proofs show some fault on her part, some of it at least was caused by defendant's objectionable language and conduct. It is further argued that the thing which caused the rupture between them was plaintiff's desire to have the title to the home placed in her and her husband as an entirety, and that she urged this with such constancy that it exhausted defendant's patience. There is some proof that she urged that the home be placed in their joint names, but she denies that she urged it to the extent stated by defendant. Without going further into the details, we may say that we think plaintiff's proofs fairly supported her charges and justified the trial court in granting her a decree of divorce.

Witnesses who were acquainted with real estate values in the city of Battle Creek testified the house and lot was fairly worth $7,500. The furniture when purchased cost $500. Beside this defendant testified he had $300 in the bank. If we were satisfied that these items of money and property were all that the defendant possessed, we might think with defendant's counsel that an award of $3,500 to plaintiff was too large. We are in doubt concerning the extent of defendant's possession because there was no material change in the manner of their living after they finished paying for their home and before. The proofs show they paid for their lot in one year, and their house in less than two years and a half. When defendant took the bank book from plaintiff there was credited on it $400. That was five years ago, and at the hearing defendant testified that there was then only $300 on the bank book. Defendant's testimony on this phase of the case was shifty and lacked candor. Having this view of the matter we are inclined to affirm the conclusion of the trial court on the question of

permanent alimony as well as upon the granting of a decree of divorce to plaintiff.

The decree of the trial court will be affirmed, with costs to appellee.

CLARK, C. J., and MCDONALD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.